**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES ERIC KENNEDY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 11-CV-162-TCK-TLW |
| ) | |
| MIKE ADDISON, Warden, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1), filed by Petitioner James Eric Kennedy, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 5) and the state court records (Dkt. # 7) necessary for the adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 8). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

Petitioner challenges his conviction of Child Sexual Abuse (Count III) entered in Washington County District Court, Case No. CF-2004-560.[1] (Dkt. # 7-3, O.R. at 3). Petitioner's conviction resulted from his sexual abuse of his daughter, K.K  At trial, K.K. testified that in 1999, when she was nine years old, Petitioner "use[d] to come to my bedroom . . . put his hand underneath my clothes and touched me in my vagina." (Dkt. # 7-1, Tr. Vol. II at 86). She testified that Petitioner also "[l]icked [her] chest and just kissed [her] all over." Id. When K.K. turned 12, Petitioner started "coming in [her] room and just doing more . . . of the touching and [would] dry

---

[1] Petitioner was acquitted of two Counts of Lewd Indecent Proposal or Act Against a Child Under 16 (Counts I and II). These charges were based on allegations by C.M.C., Petitioner's niece.

hump" her through her clothes. Id. at 87. He also forced K.K. to have oral sex on multiple occasions. Id. at 88-89. K.K. testified that Petitioner threatened, more than once, to kill her and her family members if she told anyone about the abuse. Id. at 89, 90.

After a two-day trial, a jury found Petitioner guilty of Count III and acquitted him of Counts I and II. Id. at 151-53. The jury recommended a sentence of life imprisonment and a fine of $5,000. Id. at 153. At sentencing, the trial judge advised Petitioner this "is an 85% crime" and sentenced Petitioner to life in prison, but did not assess the $5,000 fine.[2] Petitioner's trial counsel was attorney Mark Kane.

Petitioner, represented by Robert W. Jackson, an attorney with the Oklahoma Indigent Defense System, perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). He raised a single proposition of error: "The trial court, by conducting portions of the voir dire in chambers and in Mr. Kennedy's absence, violated his right to be present during all critical stages of his trial." (Dkt. # 5-1). On June 22, 2010, in a summary opinion, the OCCA affirmed the judgement and sentence of the trial court. (Dkt. # 5-3). Petitioner did not seek post-conviction relief. See Dkt. # 1.

On March 17, 2011, Petitioner timely filed his habeas petition. (Dkt. # 1). He raises a single ground of error, the same raised to the OCCA on direct appeal. Respondent argues that the OCCA's

---

[2]K.K.'s allegations also resulted in the filing of sexual abuse charges in Tulsa County District Court, Case No. CF-2006-1525. In that case, a jury found Petitioner guilty of two counts of Sexually Abusing a Minor Child. The Tulsa County District Court sentenced Petitioner to 20 years and 30 years imprisonment, to be served consecutively. (Dkt. # 7-2, Tr. Sentencing at 2). In the Washington County case, the trial judge ordered Petitioner's life sentence to be served consecutively to the 50 years he received in the Tulsa County case and declined to assess the fine, stating "I'm not going to show any fine in this case given the amount of time he's facing." Id. at 4.

2

decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  (Dkt. # 5 at 4).

## *ANALYSIS*

**A.      Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented his claim to the OCCA on direct appeal.  Therefore, he has exhausted his state court remedies.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.      Claim adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S.

3

685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

Petitioner presents a single ground of error in his habeas petition, that "[t]he trial court, by conducting portions of the voir dire in chambers and in Kennedy's absence, violated his right to be present during all critical stages of his trial." (Dkt. # 1 at 4). On direct appeal, Petitioner argued that he did not waive his right to be present during the individual voir dire and thus his absence from these proceedings resulted in a deprivation of his right to be present at all critical stages of the trial. See, e.g., Dkt. # 5-1. The OCCA found that "[t]he record here supports a conclusion that, by his conduct, Kennedy waived his right to be present during individual voir dire." (Dkt. # 5-3 at 2). Relying on United States v. Gagnon, 470 U.S. 522, 526 (1985), the OCCA stated that "[w]aiver may be implied by defendant's conduct . . . and the defendant neither objects nor attempts to exercise his right to be present, he has waived that right." (Dkt. # 5-3 at 2). The court further stated that "the record fails to show any specific prejudice resulting from his absence." Id. at 3. It also rejected Petitioner's suggestion that the error was structural error. Id.

At Petitioner's trial, the trial judge conducted individual voir dire in chambers for six potential jurors. After seating the first panel of potential jurors, the trial judge gave instructions regarding the case, presentation of evidence, and the process of voir dire. See Dkt. # 7, Tr. Vol. I at 10-14. The trial judge told the jurors that he and the attorneys would ask questions during voir dire to determine the juror's qualifications to serve on the jury. Id. at 13-14. The trial judge informed the jurors, "[i]f any of my questions or the attorney's questions touch on sensitive issues

4

that you do not want to discuss in this courtroom in front of everyone then we will go back into chambers, myself, you, and the attorneys, and we will go back and discuss those in private with the court reporter." Id. at 14. When the trial judge asked the panel whether "any of you had either relatives or close friends that have been accused or charged with a crime," six individuals asked to discuss their answer privately. See id. at 33, 38, 44, 52, 58, 61. After the first request, the trial judge took a ten minute recess and conducted an individual voir dire during the recess. Id. at 33. After each of the remaining requests, however, the judge responded to the request by stating "okay," "that's fine," or "sure," prior to exiting the courtroom, but did not call a recess.

Though the record is silent as to Petitioner's actual whereabouts during the six individual voir dire inquiries, Petitioner claims he was not allowed to go back to chambers with his attorney. Petitioner claims he was "wearing a 'shock' jacket, with a Deputy standing behind him during trial. . . . [When] Petitioner attempted to go back to the Chambers to assist his Defense Attorney, and hear [the concerns of the six potential jurors,] Petitioner . . . was told by the Deputy, not to get up, and if the Judge wants him in chambers, the Judge would call him back in chambers." Id. at 4-5. Petitioner does not articulate exactly when, during voir dire, this exchange occurred.

It is well established that a defendant's right to be present at all stages of a criminal trial is rooted in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. See, e.g., Illinois v. Allen, 397 U.S. 337, 338 (1970); Gagnon, 470 U.S. at 526; Snyder v. Massachusetts, 291 U.S. 97 (1934), overruled in part on other grounds, Malloy v. Hogan, 378 U.S. 1 (1964). Additionally, in Oklahoma, a defendant's right to be present "at the trial" is protected by statute. See OKLA. STAT. tit. 22, § 583.

The facts underlying Petitioner's claim are similar to those addressed by the Tenth Circuit in Bland v. Sirmons, 459 F.3d 999 (10th Cir. 2006) and in Lockett v. Trammel, 711 F.3d 1218 (10th Cir. 2013), cert. denied, 134 S. Ct. 924 (U.S. 2014). In Bland, the trial court conducted voir dire of 32 individual jurors in chambers. Despite an express waiver by his trial counsel that "Mr. Bland's presence was not required during the in-chambers questioning," Bland raised the constitutional claim on direct appeal and in his federal habeas petition. Bland, 459 F.3d at 1020. Rejecting Bland's argument, the Tenth Circuit stated,

> Although a defendant has a due process right "to be present . . . whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," this right does not require that a defendant be present at all proceedings. Snyder, 291 U.S. at 105-06, 54 S. Ct. 330. Instead, the constitutional right to be present exists "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. at 107-08, 54 S. Ct. 330. For example, a defendant need not be present during all communications between a judge and a juror. See United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam) (holding that a defendant's absence during an *in camera* discussion between the judge and a juror to ascertain bias did not violate the defendant's right to due process). When the defendant's "presence would be useless, or the benefit but a shadow," due process does not require the defendant's presence at a trial proceeding. Snyder, 291 U.S. at 106-07, 54 S. Ct. 330. In determining whether exclusion of a defendant from a proceeding violated due process, we consider the proceedings "in light of the whole record." Gagnon, 470 U.S. at 526-27, 105 S. Ct. 1482.

Id at 1020-21. The Tenth Circuit concluded that the limited in-chambers proceedings did not infringe on Bland's due process rights since he was able to observe the rest of voir dire and was present for the entire trial. Id. at 1021. Thus, the Tenth Circuit found that the Petitioner was not entitled to habeas corpus relief under 28 U.S.C. § 2254(d). Id.

In Lockett, the petitioner claimed his due process rights were violated when the trial court conducted voir dire of 19 individual jurors in chambers. The Tenth Circuit, in reliance on Bland and Snyder, stated that "the right to be present is limited to circumstances where a defendant's 'presence

6

has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" Lockett, 711 F.3d at 1250 (quoting Snyder, 291 U.S. at 105–06). The Tenth Circuit noted that Lockett did not object to his absence and "[a]t one point during the individual conferences, the trial judge asked defense counsel if Mr. Lockett's absence was a problem, and counsel responded that it was not." Id. at 1251. The Tenth Circuit concluded that Lockett was not deprived of his constitutional right because, as in Bland, he "was present for the majority of voir dire, and the trial judge asked all questions during the individual conferences." Id.

Bland and Lockett are instructional for the resolution of Petitioner's claim. Petitioner was not present for the individual voir dire of six potential jurors, but his trial counsel was present. Petitioner was present for all remaining voir dire and the entire trial. Of the six jurors who were questioned in chambers, the trial judge immediately excused two for cause. Of the four remaining, the State asked questions of only two individuals, and defense counsel made no inquiry of any of the four. The trial judge excused one of those four jurors on a peremptory challenge by the State. (Dkt. # 7, Tr. Vol. I at 138). The remaining three served on Petitioner's jury. Of those three, Petitioner raises specific concerns regarding only one, Fred Durst. (Dkt. # 8 at 11). While in chambers, Durst told the trial judge that approximately 15 years earler, his wife was charged with child abuse by the Washington County District Attorney after she spanked one of their children too hard. (Dkt. # 7, Tr. Vol. I at 53). After she agreed to go to counseling, the court dismissed the case. Id. at 54. When asked by the trial judge if he felt he could be fair and impartial to both sides, Durst responded he could. Id. Durst stated that there was nothing about his situation or his experience that would cause any problem with Petitioner's case. Id. at 56. Defense counsel did not ask any questions of Durst. Id. at 57.

7

Petitioner argues that he should have been in chambers during this voir dire. He argues that the revelations made by Durst "are precisely the type of revelations that a defendant should be present to view first hand." (Dkt. # 8 at 11). Petitioner states that:

> [p]erhaps Mr. Durst was angry at the prosecutor's office because he felt the matter with his wife was allowed to proceed too far. On the other hand, it is equally reasonable to conclude that Mr. Durst felt indebted to the particular district attorneys's [sic] office because the charges were ultimately dropped. The point is that [Petitioner] was deprived of his Constitutional right to assess these very different and relevant possibilities.

Id. at 11-12. He claims his absence "impaired his ability to contribute to intelligently exercised peremptory challenges because the topics addressed in chambers were never discussed in his presence." Id. at 12. Ultimately, Petitioner argues he never waived his right to be present during the individual voir dire. Id. at 7.

After a review of the record, the Court concludes Petitioner waived his right to be present during the individual voir dire. Petitioner did not expressly waive his right to attend the individual voir dire conferences. Thus, Petitioner's conduct is relevant. The trial judge, the prosecutor, defense counsel, and a potential juror exited the courtroom six separate times to conduct individual voir dire in chambers. The record is silent as to any objection from defense counsel or Petitioner about his absence from the individual voir dire nor did the court inquire as to Petitioner's absence. Petitioner also claims he was wearing a "shock jacket" and attempted "to follow his Defense Counsel into the Judge's Chambers," but the Deputy Sheriff told him "the Judge would call for Petitioner" if he was needed. (Dkt. # 8 at 6). Assuming this is true, Petitioner could have informed his attorney about the statement made by the Deputy Sheriff and asked counsel to request the trial judge to allow Petitioner to be present during the individual voir dire. No such request is in the record. Respondent argues, and this Court agrees, that "Petitioner does not contend, nor does the

record support, a conclusion that the trial court prevented his attendance at any of these proceedings." (Dkt. # 5 at 8).

Finally, in Gagnon, the Supreme Court stated that when a defendant knows the court is conducting an in camera hearing and fails to invoke his right to be present under Federal Rule of Criminal Procedure Rule 43, that failure "constitutes a valid waiver of that right." Gagnon, 470 U.S. at 529. The same can be said under the corresponding provision of Oklahoma law, OKLA. STAT. tit. 22, § 583. See Dkt. # 5-3 at 2; see also Watson v. State, 234 P.3d 111 (Okla. Crim. App. 2010). Petitioner knew what was taking place in chambers. The trial judge informed all in attendance that he would allow any juror to request an individual voir dire if the question was sensitive or if they did not want to answer in open court. (Dkt. # 7, Tr. Vol. I at 14). Further, each potential juror specifically asked to speak with the judge in private prior to answering the question. Petitioner's failure to act or raise an objection as the judge, attorneys, and a juror rose and exited the courtroom six times, is sufficient to conclude Petitioner waived his right to be present.

Even if Petitioner's constitutional right was violated, the Court finds the violation was harmless. Petitioner asserts he actively assisted his defense counsel during voir dire. See Dkt. # 1 at 4; Dkt. # 8 at 6. Petitioner had the opportunity to discuss the substance of each individual voir dire with his trial counsel, including the statements of Juror Durst. Petitioner was present during all remaining voir dire, allowing him to observe the demeanor of Durst and the other jurors, and to confer with his defense counsel regarding use of peremptory challenges. Further, Respondent argues, and this Court agrees, that Petitioner fails to show how his absence "affected his opportunity to defend himself." (Dkt. # 5 at 8). Petitioner does not point to, nor does the Court find, anything in the record that suggests the jury was tainted or that the jury was confused about any instructions

9

given by the trial court.  See Dkt. # 7-3, O.R. at 154-57.  Finally, Petitioner does not claim that the proceedings were "thwarted by his absence."  See Bland, 459 F.3d at 1020.

Therefore, after a consideration of the entire record, the Court concludes that Petitioner waived his right to be present during the individual voir dire of the six prospective jurors in chambers.  Petitioner fails to show how the trial court prevented his presence, nor does Petitioner show how his absence denied him an impartial jury.  Therefore, the decision by the OCCA was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  The petition for writ of habeas corpus is denied.

**C.    Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority

suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate judgment shall be entered in this matter.

**DATED** this 3rd day of April, 2014.

**TERENCE KERN**
**United States District Judge**